UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **COALITION FOR SPIRITUAL AND PUBLIC LEADERSHIP, FR. LARRY DOWLING, SR. JEREMY MIDURA, FR. DENNIS BERRY, FR. DAN HARTNETT, and MICHAEL N. OKIŃCZYC-CRUZ,**<br><br>Plaintiffs,<br><br>-against-<br><br>**KRISTI NOEM, TODD LYONS, MARCOS CHARLES, RUSSELL HOTT, RODNEY S. SCOTT, GREGORY BOVINO, PAMELA BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, and DONALD J. TRUMP**<br><br>Defendants. | Civil Action No. 1:25-cv-14168<br>Hon. Judge Robert Gettleman<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

The Plaintiffs Coalition for Spiritual and Public Leadership, Fr. Larry Dowling, Sr. Jeremy Midura, Fr. Dennis Berry, Fr. Dan Hartnett, and Michael N. Okińczyc-Cruz, hereby move, pursuant to Rule 65(a), Fed. Rules Civ. P., that the Court preliminarily enjoin Defendants from denying Plaintiffs access to minister to detainees in the ICE facility at Broadview, Illinois, for religious services.[1] Such services to which the order allowing immediate access would apply include praying with detainees, providing pastoral care to detainees, and ministering sacraments, including the distribution of Communion to detainees who seek such religious services, subject to reasonable conditions as to times and places, as to which Defendants shall immediately advise the Court.

---

[1] In support of this motion, Plaintiffs have filed herewith the Declarations of Sr. JoAnn Persch (Exhibit A), Michael N. Okińczyc-Cruz (Exhibit B), and Fr. Larry Dowling (Exhibit C).

While there is no filing of an appearance of counsel on behalf of Defendants, the Plaintiffs served the complaint on November 21, 2025, and are serving on today December 5, 2025, this motion and attachments upon the United States Attorney for the Northern District of Illinois via email.

Plaintiffs and detainees satisfy the elements to grant a preliminary injunction, *i.e.*, that they are "likely to succeed on the merits, . . . likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Bevis v. City of Naperville*, 85 F. 4th 1175, 1188 (7th Cir. 2023) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Plaintiffs and detainees can make a strong showing on the likelihood of success and irreparable harm, which are "the two most important considerations." *Id.*

1. **Likelihood of success on the merits**

Plaintiffs are highly likely to succeed on the merits, as Defendants have completely denied, without cause, the rights of Plaintiffs under the First Amendment and other federal laws to engage in a core religious practice of Catholics and all Christians: ministering to the spiritual needs and providing spiritual consolation to those imprisoned. Giving absolutely no reason why such a practice, once allowed at Broadview, may not continue, and raising no instance where such a practice over the years at Broadview by Sister MaryJo Persch and Sister Pat Murphy ever raised any problem or interference with the duties of Defendants. Defendants will undoubtedly be unable to meet the evidentiary burden of showing their novel and total ban on religious ministry "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. Plaintiffs have claims directly under the First Amendment for purely injunctive relief against the Defendant federal officials under this

2

Court's inherent equity jurisdiction to restrain invasions by the federal government of constitutional rights, as well as under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(a), which allows injunctive and other relief, including legal fees. Plaintiffs also have third-party, or *jus tertii*, standing to raise the claims of the detainees who are unable to assert their own First Amendment and RFRA claims due to their isolation and detention. Such standing, in which third parties are unable to assert their own claims, has been recognized by the Supreme Court. *See, e.g., June Medical Services LLC v. Russo,* 591 U.S. 299, 318 (2020) (citing cases where third-party standing allowed). And as the Supreme Court has determined, "the least-restrictive means is exceptionally demanding." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U. S. 682, 728 (2014) .

Here, there is no question that Defendants denied Plaintiffs the right to pray on the facility grounds after erecting a fence around the Broadview facility in September 2025. Twice, they directly denied Plaintiffs permission to enter the facility and minister to detainees, despite multiple attempts by Plaintiffs to arrange a reasonable accommodation before the Procession on October 11, 2025, and the Catholic Mass on November 1, 2025. Defendants have now ordered that no prayer is allowed on federal property on or in the Broadview facility. *See* Plaintiffs' Complaint for Injunctive and Declaratory Relief, at ¶¶ 58-59.

Heretofore, the only reason given to Plaintiffs was "safety and security," though there has never been a problem with religious ministry within Broadview. In any case, the RFRA requires a "more focused" inquiry. "It 'requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Hobby Lobby Stores,* 573 U.S. at 726 (quoting *O Centro*, *supra*, at 430-431 (quoting §2000bb-1(b))). These Plaintiffs have

3

had decades of experience in visiting and providing religious consolation to prisoners, and, in the past, the defendant ICE has even invited Sisters JoAnn Persch and Pat Murphy to visit not just Broadview but other detention facilities. Having made a *prima facie* showing that Defendants have burdened Plaintiffs' and detainees' religious practice, the "burden shifts to the government to justify the burden under strict scrutiny." *Soc. of Divine Word v. USCIS*, 129 F.4th 437, 449 (7th Cir. 2025). A weak assertion that these particular Plaintiffs could pose a risk to safety and security would not even survive casual much less strict scrutiny.

    2. **Irreparable injury**

It is well settled that "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). There is—first of all—irreparable injury to the Plaintiffs, whose lives are devoted to providing religious ministry and spiritual consolation to those who are most in need of it. Plaintiffs have lost their own religious freedom, by blanket denial of any opportunity to provide spiritual consolation. For these Plaintiffs, who are in religious life, or have a religious calling, what they assert in this case as a First Amendment right is an obligation to serve, and an exercise of religious faith. It is also an exercise of faith that, until now, federal and state and local governments have allowed in the operation of the country's prisons and jails. Plaintiffs suffer irreparable injury when they cannot exercise their faith to provide religious and spiritual consolation in this manner. The irreparable injury suffered by the detainees in their loss of religious freedom is a corresponding irreparable injury to Plaintiffs in the practice of their religious calling Here, Plaintiffs believe there is an urgent need to provide religious consolation to the detainees. The harm to detainees from denial of the consolation of religion

"can never be remedied, especially as they are being spiritually abandoned in their darkest hours." *See* Declaration of Sr. JoAnn Persch, at ¶ 17.

In support of this motion, Sr. JoAnn Persch, who was 91 years old, signed the Declaration on Friday November 14, 2025. She died later that same day. Plaintiffs have attached the Declaration of Sr. JoAnn, though now deceased, to show that this act of mercy for the detainees was an important way of exercising her own religious faith, up to the very end of her life. As Michael Okińczyc-Cruz notes in his declaration,

> As a Catholic, I believe that visiting immigrant detainees incarcerated by ICE is a tenet of my faith. Since what ICE calls its Operation Midway Blitz, people who have been seized by ICE from their homes and families and held in ICE facilities need pastoral care now more than ever. The trauma caused by the ICE seizures, with no access to notify their families or contact legal counsel, has left detainees isolated and abandoned. It has caused them to become severely depressed and wholly fearful for their lives, as they are told they will be deported to places many fled in fear for their lives in the first place. In addition, they are deeply anxious and fearful for their families that they have been separated from, who may no longer have any financial or material support, housing, or income. And, importantly, it will deny wives, husbands, fathers, mothers, sons, daughters, and all members of their families and friends the love that sustains their souls. Care of the soul is the essence of pastoral care. At this time of their lives, they need the support of their faith community and pastoral care. As a Catholic, I am called to minister to them, and doing so – performing this corporal work of mercy – is a religious practice of my faith.
>
> The practice of my faith is being denied to me and all detainees, with no explanation. I do not believe that merely saying no to the requests to offer pastoral care to detainees can be sufficient to deny my right to practice my faith. Nor do I believe that denying my rights based solely on a reference to "safety and security" can be sufficient, especially when access to Broadview was granted to Sr. JoAnn Persch and Sr. Pat Murphy for over a decade.
>
> Most importantly, denying detainees' rights to their faith, including denying them pastoral care, is harming them in ways for which they can never be healed. ICE's treatment of detainees crushes their souls. Denying their rights to practice their faith and receive the sacraments and pastoral care will only lead to despair.

Declaration of Michael Okińczyc-Cruz, at ¶¶ 24- 26.

5

It is the case that when clergy are denied their right to practice their faith, "the detainees [are] also denied their rights to practice their faith. The denial of [the clergy's] rights cannot be undone, but the denial of detainees' rights cuts even deeper as it threatens to destroy any hope detainees may have." Declaration of Fr. Dennis Berry, at ¶ 9. There is nothing that can make them whole.

### 3. The balance of hardships does not favor Defendants

The balance of hardships favors Plaintiffs and detainees. There is no harm to DHS or ICE in allowing religious ministers to do what they have done for years at Broadview and enter the facility to provide pastoral care to detainees. Doing so will ensure that the Plaintiffs and detainees can exercise their right to practice their faith, as guaranteed by the First Amendment. The harm to Plaintiffs and detainees caused by the denial of access, as noted above, is irreparable. The balance clearly favors Plaintiffs and detainees.

Furthermore, it is in the public interest, and *a fortiori* not contrary to the public interest, as it cannot be "shown that granting [Plaintiffs' requests] will harm the public." *Cuomo*, 592 U.S. at 19. And the matter is not moot, as Defendants continue to deny Plaintiffs and detainees their rights. *Id.* at 20 (citations omitted). The continuing violation has ordered the end to all prayer on federal property, without any explanation. Such a fiat is inherently contrary to the Free Exercise Clause and bereft of any Constitutional or legal authority.

The injunction is also in the public interest, as it furthers improvements to the conditions at Broadview identified in *Gonzalez v. Noem*, Case No. 25-cv-13323 (Gettleman J.), and *Chicago Headline Club v. Noem*, 25-cv-12173 (Ellis, J.). Like each of these cases, the injunction would require Defendants to comply with the Constitution and federal statutes, as well as improve the conditions of detainees who have been seized and are detained in the ICE facility at Broadview.

6

### 4. **Bond should be waived**

The purpose of a bond is to ensure that the enjoined party is not permanently harmed "by an erroneous preliminary injunction." *Roche Diagnostics Corp. v. Med. Automation Sys., Inc*., 646 F.3d 424, 428 (7th Cir. 2011). There are multiple reasons why a bond should be waived here. First, there are no expected damages should an erroneous injunction be issued. *See Swart v. City of Chicago*, 440 F. Supp. 3d 926, 945 (N.D. Ill. 2020) (waiving a bond when plaintiffs requested waiver and no "demonstrated any costs or monetary damages that might result from issuance of the injunction"); *see also Habitat Educ. Ctr. v. U.S. Forest Serv*., 607 F.3d 453, 458 (7th Cir. 2010) (holding no bond is required without demonstration that damages will incur).

Next, the balance of harm to the free exercise of religion should the injunction be denied outweighs the costs. *See, e.g., Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015) (waiving bond after imposing a preliminary injunction to prevent the violation of First Amendment rights); *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 695 (N.D. Ill. 2023) (same). While the case here is not on all fours with *Backpage* or *Raoul*, the principle is the same in that the balance to not imposing the injunction would continue the irreparable harm of continuing to deny Plaintiffs' and detainees' expression of their rights under the First Amendment, as the courts in *Backpage* and *Raoul* held with respect to the right of speech. This is all the more true here, where the issue is without question that the Free Expression Clause has been violated and no compelling government interest has been proffered to justify it.

### **Conclusion**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and order Defendants to allow Plaintiffs immediate access to the ICE facility at Broadview, Illinois, to freely exercise their faith by praying with detainees, providing pastoral care to detainees,

and ministering sacraments, including the distribution of Communion to detainees who seek such religious services.

| | |
|---|---|
| Dated: December 5, 2025 | Respectfully submitted,<br><br>/s/ *Thomas H. Geoghegan*<br>Attorney for Plaintiffs<br><br>DESPRES, SCHWARTZ,<br>& GEOGHEGAN, LTD.<br>Thomas H. Geoghegan<br>Will W. Bloom<br>77 West Washington Street, Suite 711<br>Chicago, Illinois 60602<br>Tel.: (312) 372-2511<br>tgeoghegan@dsgchicago.com<br><br>Patrick V. Dahlstrom, Esq.<br>10 South La Salle Street, Suite 3505<br>Chicago, Illinois 60603<br>Tel.: (312) 377-1181<br>pdahlstrom@pomlaw.com<br><br>**Attorneys for Plaintiffs** |