**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **COALITION FOR SPIRITUAL AND PUBLIC LEADERSHIP, FR. LARRY DOWLING, SR. JEREMY MIDURA, F. DENNIS BERRY, FR. DAN HARTNETT, and MICHAEL N. OKINCZYC-CRUZ** )))))) | |
| ) | Civil Action No. 25 C 14168 (RWG) |
| Plaintiffs, )) | |
| -against- )) | |
| **KRISTI NOEM, TODD LYONS, MARCOS CHARLES, RUSSELL HOTT, RODNEY S. SCOTT, GREGORY BOVINO, PAMELA BONDI, U.S. DEPARTMENT OF HOMELAND SECURITY, U.S. DEPARTMENT OF JUSTICE, and DONALD J. TRUMP** )))))))) | |
| ) | |
| Defendants. )) | |

**PLAINTIFFS' RENEWED MOTION FOR**
**SUPPLEMENTAL PRELIMIARY INJUNCTIVE RELIEF**

The Coalition for Spiritual and Public Leadership, Fr. Larry Dowling, Sr. Jeremy Midura, Fr. Dennis Berry, Fr. Dan Hartnett, and Michael N. Okińczyc-Cruz ("Plaintiffs"), hereby renew their motion, pursuant to Rule 65, Fed. Rules Civ. P., requesting that the Court order supplemental relief based on the preliminary injunction order already entered in this case – specifically to

(1) provide access for religious services similar to that previously authorized for Ash Wednesday, for the dates of April 2, 2026 (celebration of Holy Thursday), April 3, 2026 (Good Friday), April 4, 2026 (Holy Saturday), and April 5, 2026 (Easter Sunday);

(2) require the Defendants to submit a plan for approval of this Court to provide protocols

for regular access of clergy for religious service to detainees at the Broadview facility; and

(3) allow Plaintiffs and other clergy and all those of any religious faith to conduct public prayer outside of the Broadview facility.

Such services to which the order allowing immediate access would apply include praying with detainees, providing pastoral care to detainees, and ministering sacraments, including the distribution of Communion to detainees who seek such religious services, subject to reasonable conditions as to times and places, as to which Defendants shall immediately advise the Court.

Heretofore, the Court found that Plaintiffs had "satisfied the requirements to obtain a preliminary injunction," with respect to their claims under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. 2000bb-1(a), and granted Plaintiff's access to the Broadview facility on Ash Wednesday. See Memorandum Opinion & Order (the "Order"), ECF #26, at 5. The Court further ordered the parties "to meet and confer with regard to plaintiffs' religious ministry at the Broadview facility after Ash Wednesday." *Id.,* at 6. Defendants are not willing to allow anymore "personal interaction between Plaintiffs and detainees," or for Plaintiffs "to engage in any prayer outside the Broadview facility and in view of the detainees." *Id*.

Accordingly, as this Court has already found that Plaintiffs satisfy the requirements for a preliminary injunction and granted an injunction directing Defendants to allow for access to the Broadview facility on Ash Wednesday, Plaintiffs request the Court to direct Defendants to allow access to the Broadview facility in the morning and afternoon on Holy Thursday, April 2, 2026, Good Friday, April 3, 2026, Holy Saturday, April 4, 2026, and Easter Sunday, April 5, 2026. In addition, Plaintiffs request the Court order Defendants to submit a protocol to Plaintiffs regarding their religious ministry, including (1) personal interactions between Plaintiffs and detainees daily

in the morning and afternoon, (2) the ability of Plaintiffs to engage in prayer outside of the Broadview facility and in view of the detainees.

On March 20, 2026, in a similar proceeding, *Minneapolis Area Synod of the Evangelical Lutheran Church in America v. U.S. Department of Homeland Security*, Civil No. 26-1576 (JWB/DTS), Judge Jerry W. Blackwell ordered the removal of any bar to clergy access to the Whipple ICE facility "for the duration" of the litigation, and ordered Defendants to "develop and implement a written protocols that establishes a workable process for clergy access to the Whipple facility." Civ. No. 26-1576 (JWB/DTS), ECF #57 at 2, ¶¶ 1-2 (attached hereto as Ex. 1). Here, the Court heretofore directed the parties to discuss a protocol for continued access to Broadview, but the Government declined any access. The current renewed motion seeks an order directing the Government to submit a protocol for clergy access.

## BACKGROUND

### A. <u>Holy Week</u>

Plaintiffs are requesting access to the Broadview Facility during Holy Week, specifically each day from Holy Thursday, April 2, 2026, through Easter Sunday, April 5, 2026. Easter is the most significant feast day in the Catholic Church, as it is the day Catholics celebrate the Resurrection of Jesus, which is the foundation of the Christian Faith. There is no more important time for Plaintiffs to offer pastoral care, prayer, and Holy Communion than these days. Plaintiffs, in the first instance, are simply asking for what was allowed weeks ago on Ash Wednesday, when the ICE staff at Broadview greeted clergy, including some staff who received ashes during the visit.

### B. <u>Pastoral Care</u>

Pastoral care in the Catholic Church is not some fungible or interchangeable commodity

that can be easily replaced. Plaintiffs in this Action claim a specific religious obligation to the detainees going through Broadview – not merely because the majority of them are Catholics, but because they are parishioners with whom the Plaintiffs have a special religious bond. Detainees likely worship in one of the many Chicago parishes that are part of the Coalition for Spiritual and Public Leadership ("CSPL"), which is a Plaintiff in the Action. Many of these parishes offer Masses in Spanish, the language spoken by the vast majority of people detained by ICE. The detainees attended weekday and Sunday Masses at Plaintiffs' or member parishes. They leave behind family members in our parishes. Our bond with the Broadview detainees is not just our faith – but the parish life we have shared with them as part of that faith. We cannot follow some of them to their far-flung destinations or render the parish-based religious obligation we have toward all of them without the opportunity to pray with them one last time while still at Broadview. Also, the earliest hours of their sudden and traumatic detention at Broadview are perhaps the most terrifying and potentially devastating. Indeed, suddenly, unexpectedly, and forcibly ripped from spouses, children, employment, friends, family, and spiritual communities, with no understanding what is next in store, these first hours are when pastoral care and support are vitally needed.

The role of the parish is more than simply a place to receive the Catholic sacraments. As the Canon Law states, a parish is "a certain community of the Christian faithful stably constituted in a particular church, whose pastoral care is entrusted to a pastor as its proper pastor under the authority of the diocesan bishop." 1983 Code c.515, § 1. The Church is a community, and the parish is a fundamental building block of that community. Catholics are called to engage with their communities, to help in their parishes, and, importantly, to engage with their clergy and fellow parishioners. The obligation between pastors and parishioners is deeply embedded in religious and cultural roots. The pastoral care that Plaintiffs and other clergy provide is unique as it includes

spiritual and practical counseling that addresses multiple facets of a parishioner's lifeworld. It is the role of confessor and counselor at the heart of the "community of the Christian faithful." For many detainees, once they are transported to a detention facility or deported out of the country, the community they have in their parishes in Chicago is severed. The last opportunity that they will have to connect to any semblance of that community is when Plaintiffs and other clergy meet with them at the Broadview facility before they are cast adrift. The Plaintiffs' ministry is to provide that semblance, that connection of community, and uplift them and assure them of God's and their community's support and recognition of their worth and humanity before they head off into an unknown future. It simply cannot be replicated at detention centers or in a different country, when they are severed from their communities.

The harm caused by the lack of pastoral care and the deprivation of spiritual support exacerbates the separation of families and detainees. Recently, Fr. Dennis Berry accompanied multiple families whose loved ones were detained and/or deported. Among those being detained was a young Venezuelan couple held at Broadview days after Christmas. They were separated, with the woman sent to a facility in Kentucky, while the man was sent to a facility in Indiana. The last possible opportunity they had for pastoral care, to receive spiritual and moral support, and to be consoled by the recognition of their God-given humanity before being separated from each other and their families for an indefinite period of time, could only have occurred through Plaintiffs living their vocations and ministering at Broadview. Detainees from Broadview were transferred to Texas, Louisiana, Kentucky, Missouri, Wisconsin, and Indiana, and "nearly half deported from the United States."[1] They are abandoned to suffer the dread and anxiety as they try to navigate a

---

[1] *See* Haru Coryne & Mick Dumke, *ICE's Illinois Arrests During Trump's Crackdown Were Among Nation's Highest*. Block Club Chicago (Dec. 23, 2025); https://blockclubchicago.org/2025/12/23/ices-illinois-arrests-during-trumps-crackdown-were-among-nations-highest/. *See also* Geoff Hing & Jill

terminal zone with little or no understanding of what's to come. To argue that it is not necessary to afford pastoral care at the Broadview facility under these circumstances is cynical and only serves to inflict an additional cruel punishment.

## ARGUMENT

### 1. Likelihood of Success on the Merits

The Court found that Plaintiffs "have shown a likelihood of success on the merits of their RFRA claim." Order at 2. The RFRA states that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). The only exception to the rule is "if the government demonstrates that the application of the burden to the person: '(1) is in furtherance of a compelling government inertest; **and** (2) is the least restrictive means of furthering that compelling governmental interest.'" Id., at 3 (bold added), citing 42 U.S.C. § 2000bb-1(b) and *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006) (explaining that RFRA adopted a "strict scrutiny test").

The Court found, and Defendants did not deny, "that the government has substantially burdened plaintiffs' exercise of religion," by (1) denying them "the right to pray on the facility grounds after erecting a fence around the Broadview facility in September 2025," (2) denying them "permission to enter the facility and minister to detainees, despite multiple attempts," and (3) ordering "that no prayer is allowed on federal property on or in the Broadview facility." Order at 3.

In response to Defendants' claim that ministering to detainees is not essential to the practice of the Catholic faith, the Court found that Plaintiffs could show that Defendants' denial of access

Castellano, N*ew ICE Midway Blitz Data Shows What Happened to Arrestees*. The Marshall Project (Dec. 18, 2025); https://www.themarshallproject. org/2025/12/18/ice-chicago-immigration-blitz-data.

to Broadview satisfied the Seventh Circuit's holding that a plaintiff "can prove that a law or regulation substantially burdens their religious practices," if the law or regulation "bears direct, primary, and fundamental responsibility for rendering a religious exercise effectively impracticable." Order at 3-4, quoting *Soc'y of Divine Word v. United States Citizenship & Immigr. Servs.*, 129 F.4th 437, 450 (7th Cir. 2025). With respect to the Government's argument that the restriction was only a temporary limitation, and in the face of the changing reasons for denying access, the Court noted that Plaintiffs were "denied access to Broadview for over five months, which undermines" the Government's argument that the visitation restriction was temporary. *Id*., at 3 n.1.

As the Plaintiffs demonstrated that the government substantially burdened their exercise of religion, the burden shifted to the government to show that the burden was in furtherance of a compelling government interest and was the least restrictive means of furthering that compelling interest. As Defendants did not offer any argument addressing the RFRA exception, the Court held that "plaintiffs have made a "'strong' showing that reveals how [they] propose[] to prove [their] case." *Id.,* at 4, quoting *Bevis v. City of Naperville*, 85 F. 4th 1175, 1188 (7th Cir. 2023).

### 2. **Irreparable Harm**

The Court noted that Plaintiffs argued that their "lives are devoted to providing religious ministry and spiritual consolation to those who are in most need of it," and "lost their own religious freedom by blanket denial of any opportunity to provide spiritual consolation." *Id*., *see also* ECF #8 at 4. As noted above, there is direct harm to the Plaintiffs and detainees in severing the pastoral relationship between clergy and parishioners by denying pastoral care. The relationship is essential to the Catholic community. There are few more traumatic times than when one's parishioners are being seized from their families, employment, schools, and community of faith, that pastoral care

7

is needed – and the lack thereof is irreparably more harmful. It is not something that can be replaced, especially when transferring to detention centers or deportation out of the country, hundreds to thousands of miles away, makes contact with one's faith community, one's parish, one's confessor, one's counselor, utterly impossible. That denial of Plaintiffs' ministry inflicts irreparable harm, and, indeed, often destroys a sacred, spiritual kinship. It is a denial of one's religious vocation.

The government refrained from making any argument regarding irreparable harm, stating that "plaintiffs cannot establish they are likely to succeed on the merits." *Id*. Because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable harm," *Elrod v. Burns,* 427 U.S. 347, 373 (1976), the Court held that Plaintiffs had "shown they are likely to suffer irreparable harm by the absence of preliminary relief." *Id.,* at 5.

### 3. **Balance of Equities and Public Interest**

The Court agreed with Plaintiffs that in the absence of preliminary relief, "the balance of equities tips in plaintiffs' favor." *Id.* Indeed, the Court noted that the government allowed religious visitation for years and that "[w]ith reasonable notice and communication addressing legitimate security and safety concerns, allowing plaintiffs to provide pastoral care to migrants and detainees does not pose any undue hardship on the government." *Id.* Moreover, the Court found that an injunction allowing Plaintiffs access to Broadview was in the public interest: "Allowing plaintiffs to provide pastoral care to migrants will improve the condition of those detained at Broadview." *Id.* As noted *supra*, the government did not offer any defense or opposition based on any of the elements to support granting a preliminary injunction other than the likelihood of success on the merits. *See also Id*. at 5 ¶3 (stating the government's lack of argument for balance of equities and public interest).

### 4. **Bond**

A bond should be waived here. First, there are no expected damages should an erroneous injunction be issued. *See Swart v. City of Chicago*, 440 F. Supp. 3d 926, 945 (N.D. Ill. 2020) (waiving a bond when plaintiffs requested waiver and no "demonstrated any costs or monetary damages that might result from issuance of the injunction"); *see also Habitat Educ. Ctr. v. U.S. Forest Serv.*, 607 F.3d 453, 458 (7th Cir. 2010) (holding no bond is required if no demonstration that damages will incur). Next, the balance of harms to the free exercise of religion, should the injunction be denied, outweighs the costs. *See, e.g., Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015) (waiving bond after imposing a preliminary injunction to prevent the violation of First Amendment rights); *Nat'l Inst. of Fam. & Life Advocs. v. Raoul*, 685 F. Supp. 3d 688, 695 (N.D. Ill. 2023) (same). While the case here is not on all fours with *Backpage* or *Raoul*, the principle is the same in that the balance to not imposing the injunction would continue the irreparable harm of continuing to deny Plaintiffs' and detainees' expression of their rights, as the courts in *Backpage* and *Raoul* held with respect to the right of speech. This is all the truer here, where the issue is no question that the Free Expression Clause has been violated and no compelling government interest has been proffered to justify it.

## CONCLUSIOIN

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this motion and order Defendants to allow Plaintiffs access to the ICE facility at Broadview, Illinois, Holy Thursday, April 2, 2026, through Easter Sunday, April 5, 2026, and twice daily during through the pendency of this action to freely exercise their faith by praying with detainees, providing pastoral care to detainees, and ministering sacraments, including the distribution of Communion to detainees who seek such religious services.

Dated: March 23, 2026

Respectfully submitted,

/s/ Thomas H. Geoghegan
Attorney for Plaintiffs


DESPRES, SCHWARTZ, & GEOGHEGAN, LTD.
Thomas H. Geoghegan
Will W. Bloom
77 West Washington Street, Suite 711
Chicago, Illinois 60602
Tel.: (312) 372-2511
tgeoghegan@dsgchicago.com

Patrick V. Dahlstrom, Esq.
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Tel.: (312) 377-1181
pdahlstrom@pomlaw.com

**Attorneys for Plaintiffs**


## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that the foregoing document was filed and served on Defendants through the Court's CM/ECF system on March 23, 2026. Parties of record may obtain a copy through the Court's ECF system,

Respectfully submitted,

/s/ *Thomas H. Geoghegan .*
Thomas H. Geoghegan

10